**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-25153-ELFENBEIN

**RONICTOR JOSEPH**,

Plaintiff,

v.

**U.S. CITIZENSHIP AND IMMIGRATION SERVICES**, *et al.*,

Defendants.
_______________________________________/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court on Defendants U.S. Citizenship and Immigration Services, Secretary of the U.S. Department of Homeland Security, Attorney General of the United States, U.S. Department of State, and U.S. Attorney's Office for the Southern District of Florida's (collectively, "Defendants") Motion to Dismiss Complaint (the "Motion") for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted (the "Motion"). *See* ECF No. [15]. The Court has considered the Motion, Plaintiff Ronictor Joseph's ("Plaintiff") Response in Opposition, ECF No. [22], Defendants' Reply in Support of the Motion, ECF No. [24], the pertinent portions of the record, and is otherwise fully advised in the premises. For the reasons set forth below, the Motion, **ECF No. [15]**, is **GRANTED**.

## I. BACKGROUND[1]

Plaintiff filed this action seeking a declaration that he derived United States citizenship through his father under former section 321(a) of the Immigration and Nationality Act ("INA"), formerly codified at 8 U.S.C. § 1432(a), and requesting judicial review of the denial of his Form N-600, Application for Certificate of Citizenship, pursuant to 8 U.S.C. § 1503(a). *See* ECF No. [1] at 1–4.

Plaintiff was born in Port-au-Prince, Haiti on May 17, 1979. *See* ECF No. [1] at 2. He alleges that he was admitted to the United States as a lawful permanent resident in 1987 and that his father, Victor Joseph, became a naturalized United States citizen in 1989, while Plaintiff was under 18 years old. *See id.* According to Plaintiff, he resided with and was supported by his father during his minority. *See id.*

Plaintiff's parents divorced in Florida in 1982. *See id.* Plaintiff alleges that the 1982 divorce decree awarded custody to his mother but was jurisdictionally defective because Haiti — not Florida — was Plaintiff's home state at the time. *See id.* Plaintiff states that, in 2007, a Florida court entered an order modifying the custody provision *nunc pro tunc* and stating that Plaintiff's father had sole legal custody of Plaintiff during his minority. *See id.* Plaintiff contends the 2007 order accurately memorialized his parents' actual custody arrangement and established the legal-custody requirement for derivative citizenship under former § 1432(a)(3). *See id.* at 2–4.

On July 20, 2007, Plaintiff filed a Form N-600 with USCIS seeking a Certificate of Citizenship. *See* ECF No. [15] at 2; ECF No. [15-1] at 1. On September 2, 2008, USCIS denied

[1] When the Court evaluates a motion to dismiss for failure to state a claim, it accepts the information in the Complaint as true and construes it in the light most favorable to Plaintiff. *See, e.g.*, *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) ("In deciding a [Federal Rule of Civil Procedure] 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff.").

the application.[2] *See* ECF No. [15-1]. USCIS determined that Plaintiff failed to establish that he was in his father's legal and physical custody during the relevant period. *See id.* at 2. The denial notice advised Plaintiff that he could appeal within 30 days and that, if no appeal were filed within the allotted time, the decision would become final. *See id.*

Plaintiff timely appealed the denial to USCIS's Administrative Appeals Office ("AAO"). *See* ECF No. [15] at 2; ECF No. [15-2]. While that appeal was pending, immigration authorities removed Plaintiff from the United States on April 29, 2009. *See* ECF No. [15-3]. On July 17, 2009, the AAO dismissed Plaintiff's appeal. *See* ECF No. [15-2]. The AAO acknowledged evidence suggesting that Plaintiff may have been in his father's physical custody beginning in 1986 but concluded that the record did not establish that his father obtained legal custody before Plaintiff reached 18 years of age in 1997. *See id.* at 2–4. The AAO therefore concluded that Plaintiff had not established derivative citizenship under former § 1432(a)(3). *See id.* at 4. Its decision expressly ordered: "The appeal is dismissed." *Id.* The accompanying instructions advised Plaintiff that any motion to reconsider or reopen had to be filed within 30 days of the decision under 8 C.F.R. § 103.5(a)(1)(i). *See id.* at 1.

Plaintiff did not file a motion to reopen or reconsider within that 30-day period. Instead, on March 1, 2023 — more than 13 years after the AAO dismissed his appeal — Plaintiff filed

[2] While the Court typically does not consider materials outside the four corners of the Complaint when evaluating a motion to dismiss, it can consider any documents "incorporated in the complaint by reference," *see Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014), and any documents incorporated by reference within the motion if they are "central to the plaintiff's claim" and their "authenticity" is "not challenged," *see Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Here, Plaintiff specifically references the denial of his Form N-600 application in the Complaint, *see* ECF No. [1] at 1, and he attaches to it a partially legible version of the denial, *see* ECF No. [1] at 45-46. Defendants, in turn, attach a legible version of the denial to the Motion to Dismiss, *see* ECF No. [15-1], and Plaintiff does not challenge its authenticity in his Response, *see* ECF No. [22]. Defendants also attach the USCIS Administrative Appeals Office's dismissal of Plaintiff's appeal in 2009 to the Motion, *see* ECF No. [15-2], which is central to Plaintiff's claim, and Plaintiff likewise does not challenge its authenticity in his Response, *see* ECF No. [22].

Form I-290B, Motion to Reopen, seeking reopening of the N-600 proceeding. *See* ECF No. [1] at 47; ECF No. [15] at 3. USCIS denied that motion. *See* ECF No. [1] at 47.

On November 5, 2025, Plaintiff initiated this action. *See* ECF No. [1]. The Complaint asks the Court to: (1) declare that Plaintiff derived United States citizenship under former § 1432(a); (2) order USCIS and the Department of Homeland Security to correct Plaintiff's immigration records; (3) order the Department of State to issue Plaintiff a United States passport; (4) declare his removal unlawful; (5) vacate his removal from federal records; and (6) recognize his immediate right to reenter the United States as a citizen. *See id.* at 4. Although Plaintiff provides a Miami mailing address in his filings, the Complaint acknowledges that Plaintiff was removed from the United States and seeks recognition of his right to "re-enter" the country. *Id.*

Defendants move to dismiss Plaintiff's Complaint under Rules 12(b)(1) and 12(b)(6). *See* ECF No. [15]. They first argue that § 1503(a) is unavailable because its plain language authorizes an action only by a person "who is within the United States," whereas Plaintiff was removed in 2009 and remained outside the country when he commenced this action. *See id.* at 5–6. Defendants next contend that Plaintiff's action is untimely because the AAO dismissed his administrative appeal on July 17, 2009, but Plaintiff did not file this action until November 2025, well beyond § 1503(a)'s five-year filing period. *See id.* at 6–8. Defendants further argue that Plaintiff's untimely 2023 motion to reopen did not restart the limitations period. *See id.* at 7–8.

Plaintiff's Response reiterates that the Court has jurisdiction under 8 U.S.C. § 1503(a) and then principally addresses the merits of his derivative-citizenship claim. *See* ECF No. [22]. He argues that the 1982 custody decree was jurisdictionally defective, that the 2007 *nunc pro tunc* order established his father's legal custody during his minority, and that the evidence shows that he resided with and was supported by his father. *See id.* at 2. Plaintiff does not substantively

address Defendants' arguments that he was outside the United States when he filed this action or that he filed this action more than five years after the AAO's final administrative denial. *See generally id.*

In their Reply, Defendants reiterate that Plaintiff does not dispute that he is outside the United States and that a Miami mailing address does not establish physical presence within the country. *See* ECF No. [24] at 1. Defendants also state that Plaintiff failed to respond to their statute of limitations argument. *See id.* at 2. The Motion is fully briefed and ripe for review.

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Rule 12(b)(1))

A Rule 12(b)(1) motion challenges the district court's subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A case must be dismissed if the court lacks statutory or constitutional authority to hear it. *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). "The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Williams v. Poarch Band of Creek Indians*, 839 F.3d 1312, 1314 (11th Cir. 2016) (quoting *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005)). If a court determines that it lacks subject-matter jurisdiction, the court must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

A defendant may challenge subject-matter jurisdiction facially or factually. *See Douglas v. United States*, 814 F.3d 1268, 1274–75 (11th Cir. 2016). A facial attack requires the court to examine the complaint, taken as true, to determine whether the plaintiff has sufficiently alleged a jurisdictional basis. *See id*. at 1274. "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229,

1233 (11th Cir. 2008) (citing *McElmurray v. Consol. Gov't of Augusta–Richmond County,* 501 F.3d 1244, 1250 (11th Cir. 2007)).

**B. Motion to Dismiss for Failure to State a Claim (Rule 12(b)(6))**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Unsupported factual allegations and legal conclusions, however, receive no such deference. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). A complaint's "well-pled allegations must 'nudge the claims across the line from conceivable to plausible.'" *Hays v. Page Perry, LLC*, 627 F. App'x 892, 896 (11th Cir. 2015) (alterations adopted; quoting *Twombly*, 550 U.S. at 555, 570).

**C. Section 1503(a) of the INA**

Title 8, United States Code, Section 1503(a) provides, in relevant part:

> If any person ***who is within*** the United States claims ***a right or privilege as a national of the United States*** and ***is denied*** such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the [Declaratory Judgment Act] . . . for a judgment declaring him to be a national of the United States. . . An action under this subsection may be instituted only ***within five years*** after the ***final administrative denial*** of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts.

8 U.S.C. § 1503(a) (emphasis added). Put simply, a plaintiff must show: (1) they are within the United States; (2) a right or privilege as a U.S. national has been denied on the ground of non-citizenship; (3) the denial constitutes a "final administrative denial;" and (4) the suit was filed within five years of that final denial. *See* 8 U.S.C. § 1503(a).

As to the third element, "the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury. . ." *Williamson Cnty. Reg'l Planning Com'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985), *overruled on other grounds*, 588 U.S. 180 (2019). The Eleventh Circuit treats an agency decision as "final" under § 1503(a) when it is the first action that actually determines a person's citizenship rights and it reflects the agency's completed decision-making (not something tentative). *See Heuer v. U.S. Sec'y of State*, 20 F.3d 424, 427 (11th Cir. 1994). This line of authority is consistent with the way the United States Supreme Court has defined finality of administrative agency actions, which has been imported specifically into § 1503(a). An agency action is "final" when it (1) determines rights or obligations and (2) marks the "consummation" of the agency's decision-making process, i.e., is not "merely tentative or interlocutory." *Alawi v. USCIS*, No. 20-CV-00608-JLT-SAB, 2022 WL 3578584, at *4 (E.D. Cal. Aug. 19, 2025) (quoting

*Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)); *see also Ortega-Morales v. Lynch*, 168 F. Supp. 3d at 1228, 1234-36 (D. Ariz. Mar. 9, 2016) (quoting *Bennett*, 520 U.S. at 177–78) (holding that denial of an N-600 application became final "no later than when the opportunity for higher agency review had passed[,]" and because the decision letter unequivocally "ordered that the [citizenship application] is denied[,]" and expressly stated that, if no appeal were filed within 30 days, "then this decision is final."). A recent Fifth Circuit decision interprets "final administrative denial" in a similar way: the first definitive denial that concludes a single, continuous N-600 proceeding triggers § 1503(a), while reopening or continuing the case postpones finality and thus postpones the availability of judicial review. *See Villegas v. Noem*, 149 F.4th 554, 571 (5th Cir. 2025).

The Eleventh Circuit has yet to address whether the finality requirement imposes a jurisdictional versus a claim preclusive bar, so other circuits and district courts that have directly addressed the issue provide persuasive authority in this context. Courts outside this Circuit have treated a "final administrative denial" as a statutory prerequisite to subject-matter jurisdiction. *See Lew Hsiang v. Brownell*, 234 F.2d 232, 233 (7th Cir. 1956) ("Without the requisite statutory denial in hand when plaintiffs filed their petition, for declaratory judgment, that jurisdictional defect tainted the proceeding."); *Nelson v. United States*, 107 F. App'x 469, 470–71 (6th Cir. 2004) (holding that § 1503(a) "requires a final administrative denial before a declaratory judgment action may be instituted" and that, absent such a denial, "§ 1503 does not apply."); *Ortega-Morales*, 168 F. Supp. 3d at 1235; *Alawi*, 2022 WL 3578584 at *4 ("It is clear a final administrative denial is required for a court to have jurisdiction under § 1503(a)."); *Said v. Eddy*, 87 F. Supp. 2d 937, 940 (D. Alaska 2000) (finding where there is no final administrative denial, "there is no basis for a declaratory action under subsection 1503(a).").

District courts considering derivative-citizenship claims have applied the same principle.

*See Harris v. Dep't of Homeland Sec.*, 18 F. Supp. 3d 1349, 1355 (S.D. Fla. 2014), *as amended* (May 8, 2014); *Thompson v. Johns*, No. 20-CV-4, 2020 WL 5507821, at *2–3 (S.D. Ga. Aug. 18, 2020), *R&R adopted*, No. 20-CV-4, 2020 WL 5414568 (S.D. Ga. Sept. 9, 2020); *Msezane v. Garland*, No. 19-CV-51, 2020 WL 1042293, at *3–4 (S.D. Ga. Jan. 29, 2020), *R&R adopted*, No. 19-CV-51, 2020 WL 1046796 (S.D. Ga. Mar. 3, 2020). In *Harris*, *Thompson* and *Msezane*, the courts explained that an individual may eventually seek declaratory relief under § 1503(a) only after an N-600 application is denied and any administrative appeal is resolved; because those petitioners had not shown that their citizenship application or removal proceedings had reached finality, the courts were without jurisdiction to entertain the derivative citizenship claims. *See Harris*, 18 F. Supp. 3d at 1355; *Thompson*, 2020 WL 5507821 at *3; *Msezane*, 2020 WL 1042293 at *4.

Section 1503(a) also imposes a five-year time limit to bring an action. The Eleventh Circuit measures the limitations period from the first administrative decision that finally and definitively denies the claimed right of citizenship, not from later downstream or duplicative denials. *See Heuer v. U.S. Sec'y of State*, 20 F.3d 424, 426-29 (11th Cir. 1994) (holding that the limitations period began with the issuance of a Certificate of Loss of Nationality, because that was the earliest agency action that denied the plaintiff's U.S. nationality; a later passport denial based on that action could not restart the limitations period). Other courts have applied the same principle in the N-600 context, explaining that § 1503(a) is triggered once the agency issues a final denial of a certificate of citizenship application and the opportunity for further review in that proceeding has run, and that later attempts to relitigate the same claim do not create a new limitations period. *See Harris*, 18 F. Supp. 3d at 1355; *Thompson*, 2020 WL 5507821, at *3; *Msezane*, 2020 WL 1042293, at *4; *Villegas*, 149 F.4th at 571.

## III. DISCUSSION

Defendants present two threshold arguments. *First*, Plaintiff cannot invoke § 1503(a) because he was not "within the United States" when he filed this action. *Second*, even if Plaintiff could satisfy the physical-presence requirement, he commenced this action more than five years after the AAO finally denied his claimed right to citizenship. The Court addresses those arguments in that order.

### A. Plaintiff Was Not "Within the United States" When He Filed This Action

Section 1503 establishes separate procedures based on the location of an individual claiming citizenship. A person "who is within the United States" may file a declaratory-judgment action under § 1503(a). 8 U.S.C. § 1503(a). A person "who is not within the United States," by contrast, may apply to a United States diplomatic or consular officer for a certificate of identity under § 1503(b) and, if such a certificate is issued, may travel to a port of entry and apply for admission under § 1503(c). 8 U.S.C. § 1503(a)–(b).

The phrase "who is within the United States" is therefore a substantive limitation on the class of claimants authorized to proceed under subsection (a). Interpreting § 1503(a) to permit a person outside the country to sue directly would render the location-based distinction between subsections (a) and (b) largely meaningless. *See Bensky v. Powell*, 391 F.3d 894, 896 (7th Cir. 2004) (explaining that § 1503(a) "is inapplicable to someone who is not in the United States when he sues"); *Hogan v. Kerry*, 208 F. Supp. 3d 1288, 1290–91 (S.D. Fla. 2016) (holding that the court lacked subject-matter jurisdiction under § 1503(a) because the claimant was not within the United States); *Campbell v. U.S. Att'y Gen.*, No. 18-CV-1604, 2019 WL 12763078, at *2–3 (N.D. Ga. June 12, 2019) (dismissing § 1503(a) action brought by a claimant residing in Guyana for lack of subject-matter jurisdiction).

The relevant point in time is when the action is instituted. Section 1503(a) speaks in the present tense: a person "who is within the United States" and whose claimed right has been denied "may institute an action." 8 U.S.C. § 1503(a). That language requires the claimant to be within the United States when the action is filed. *See Hinojosa v. Horn*, 896 F.3d 305, 315–16 (5th Cir. 2018). Indeed, *Hinojosa* held that a claimant who was physically standing at a United States port of entry when suit was filed was still not "within the United States" because she had not been admitted into the country. 896 F.3d at 315–16.

Here, the allegations and record establish that Plaintiff was not within the United States when he commenced this action. It is undisputed that Plaintiff was physically removed from the country on April 29, 2009. *See* ECF No. [15-3]. The Complaint acknowledges the removal and asks the Court to recognize Plaintiff's right to "re-enter" the United States. *See* ECF No. [1] at 4. Plaintiff's use of a Miami mailing address does not alter that conclusion Section 1503(a) separately requires that a claimant be "within the United States" and that the action be filed in the district in which the person "resides or claims a residence." 8 U.S.C. § 1503(a). A mailing address cannot substitute for the statute's distinct physical-presence requirement. *See Hogan*, 208 F. Supp. 3d at 1290–91; *Campbell*, 2019 WL 12763078, at *2–3. Treating the address listed on a pleading as sufficient would eliminate the express requirement that the person be within the country when the action is instituted.

Plaintiff's Response to the Motion does not confront this defect. *See* ECF No. [22]. His arguments concerning the validity of the 1982 custody decree, the effect of the 2007 *nunc pro tunc* order, and the evidence of his father's custody address whether Plaintiff satisfied former § 1432(a). Those arguments do not establish that Plaintiff was within the United States when he commenced this action. No matter the potential merit of Plaintiff's underlying citizenship theory, the Court

may adjudicate it only if Congress has authorized the Court to do so through the statutory vehicle Plaintiff invokes. Because Plaintiff was not within the United States when this action was filed, he cannot maintain an action under § 1503(a). The Court therefore lacks subject-matter jurisdiction over the Complaint.

**B. Plaintiff Did Not File This Action Within Five Years of the Final Administrative Denial**

USCIS initially denied Plaintiff's N-600 application on September 2, 2008. *See* ECF No. [15-1]. Plaintiff timely appealed, thereby continuing the administrative proceeding. On July 17, 2009, the AAO issued a reasoned decision addressing Plaintiff's derivative-citizenship claim and concluding that he had failed to establish citizenship under former § 1432(a)(3). *See* ECF No. [15-2]. The AAO's dispositive language was unambiguous: "The appeal is dismissed." *Id.* at 4.

That decision was not tentative, preliminary, or interlocutory. It represented the consummation of the administrative appeal, determined Plaintiff's claimed right to citizenship, and inflicted a concrete legal consequence by leaving the denial of his N-600 application in place. *See Bennett*, 520 U.S. at 177–78; *Heuer*, 20 F.3d at 427–29; *Ortega-Morales*, 168 F. Supp. 3d at 1234–36. The instructions accompanying the decision further informed Plaintiff that any motion to reconsider or reopen had to be filed within 30 days. *See* ECF No. [15-2] at 1; 8 C.F.R. § 103.5(a)(1)(i). Plaintiff did not file any motions during that period. Accordingly, the AAO's July 17, 2009 decision became the final administrative denial from which § 1503(a)'s five-year filing period began to run. Plaintiff therefore had until July 17, 2014 to institute an action under § 1503(a). However, he did not file this action until November 5, 2025 — more than 16 years after the AAO's decision and more than 11 years after the statutory period expired.

Plaintiff's March 1, 2023 motion to reopen does not revive the claim or restart the statutory period. The Eleventh Circuit has rejected attempts to reset § 1503(a)'s five-year period through

later administrative requests involving the same underlying nationality claim. *See Heuer*, 20 F.3d at 426–29. In *Heuer*, a later passport denial could not restart the limitations period because an earlier agency action had already finally denied the asserted right to nationality. *See id.* Otherwise, a claimant could circumvent Congress's five-year limitation indefinitely by repeatedly presenting the same citizenship claim to an agency and filing suit after each successive denial.

*Villegas* is also instructive. There, the Fifth Circuit distinguished between a timely motion to reopen or reconsider, which may continue the original administrative proceeding, and an untimely motion filed after the administrative decision had already become final. *See* 149 F.4th at 570–71. The court held that "a denial of a timely motion to reconsider or motion to reopen may serve as the final administrative denial on a particular claim," but "[i]f the motion is untimely, then the AAO decision is final." *Id.* at 571. Limiting that rule to timely motions prevents a claimant from extending § 1503(a)'s filing period "into perpetuity," contrary to Congress's expressed interest in finality. *Id.*

The same reasoning applies here. Plaintiff's 2023 motion was filed more than 13 years after the AAO's decision and well outside the thirty-day period provided by 8 C.F.R. § 103.5(a)(1)(i). The motion therefore did not continue the original administrative proceeding or displace the finality of the AAO's July 17, 2009 decision. USCIS's later denial of the untimely motion was a follow-on denial of the same citizenship claim and did not open a new five-year filing window. *See Heuer*, 20 F.3d at 426–29; *Villegas*, 149 F.4th at 570–71; *see also Harris*, 18 F. Supp. 3d at 1355. Plaintiff presents no argument to the contrary. His Response does not address § 1503(a)'s five-year filing requirement, dispute the date of the AAO's original decision, contend that his 2023 motion was timely, or identify any basis on which the 2023 filing could restart a period that expired in 2014. *See generally* ECF No. [22]. The documents attached to the Motion,

which Plaintiff does not challenge as inauthentic and are central to Plaintiff's claim, establish the relevant dates, and the untimeliness of the action is apparent from the record. Accordingly, Plaintiff's claim is time-barred and subject to dismissal under Rule 12(b)(6).

**C. Leave To Amend Would Be Futile And Unwarranted**

Although *pro se* plaintiffs are ordinarily afforded an opportunity to amend defective pleadings, leave to amend is not required where "amendment would be futile" or otherwise unwarranted. *See Wooden v. Armenteros*, 756 F. App'x 951, 953 (11th Cir. 2018); *see also Carpenter v. PNC Bank, Nat'l Ass'n*, 633 F. App'x 346, 348 (7th Cir. 2016) (explaining that although courts generally permit civil plaintiffs at least one opportunity to amend after dismissal, amendment is unnecessary where "it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted").

Here, the Court need not — and cannot — reach the merits of Plaintiff's claim under former § 1432(a). Federal courts must establish subject-matter jurisdiction before addressing the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Because Plaintiff was not within the United States when he filed this action, the Court lacks jurisdiction under § 1503(a) to determine whether Plaintiff derived citizenship. But even if the Court had jurisdiction to decide the merits of the case, Plaintiff did not commence this action within five years of the AAO's final administrative denial, making his claims time barred. These threshold defects require dismissal and cannot be cured by amendment. The Court therefore need not — and may not — resolve the validity or effect of the state-court custody orders, the weight of Plaintiff's evidence concerning actual custody, or whether Plaintiff otherwise satisfies former § 1432(a). Because those merits issues cannot cure the jurisdictional defect or the untimeliness of this lawsuit, any amendment would be futile and unwarranted. Accordingly, a dismissal without prejudice for lack of subject-

matter jurisdiction and without leave to amend is warranted.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** as follows:

1. Defendants' Motion, **ECF No. [15]**, is **GRANTED**.
2. Plaintiff's Complaint, **ECF No. [1]**, is **DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND**.
3. The Clerk of Court is **DIRECTED** to **CLOSE** this case.
4. All pending motions, if any, are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers in Miami, Florida on August 24, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record